IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| FUSION COMMUNICATIONS CORP., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| FUSION MEDIA NETWORK LLC, | ) |
| | )  JURY TRIAL DEMANDED |
| Defendant. | ) |

## COMPLAINT

1. Plaintiff FUSION COMMUNICATIONS CORP. ("Fusion") brings this trademark suit to force FUSION MEDIA NETWORK ("FMR") to cease its unauthorized use of Fusion's trademarks, to compensate Fusion for FMR's infringement, and to obtain all other available relief against FMR for knowingly and willfully using Fusion's trademarks without permission.

## PARTIES

2. Fusion is an Illinois corporation with its principal place of business in Chicago, IL.

3. Fusion is an established entertainment brand that has operated both online and over a subscription-based content provider.

4. Fusion first launched as an internet radio station in Chicago in May 2004.

5. Fusion's music content includes dance music, Latin music, and other styles of music.

6. In addition to music, Fusion's programming includes interviews with recording artists, music videos, and other content related to the entertainment industry and popular culture.

7. Fusion has grown to over 100,000 unique users each month from around the country and around the world.

8. Fusion has been a sponsor of the Chicago pride parade since 2006, and has been a sponsor of many other pride parades around the country, including San Francisco, Atlanta, New York, and Los Angeles.

9. In 2008, the Chicago Sun-Times ran a feature story about Fusion's history and success.

10. In 2009, Fusion was awarded a Pressie award for best internet dance station, and in 2012 and 2013 was awarded Promo Only's best internet station.

11. From 2010 until February 2014, Fusion broadcast music videos and interviews through a Comcast On Demand channel. Fusion discontinued the relationship for business reasons but continues to explore broadcasting options through cable and satellite.

12. Fusion has entered into various cross-marketing and sponsorship agreements with well-known companies such as Orbitz and Monster Beverage.

13. Fusion has undertaken substantial efforts in marketing, advertising, and promoting the Fusion brand and trademarks and enjoys significant market recognition.

14. Fusion generates revenue through advertising sold on its Fusion-branded services.

15. Fusion's founders have devoted their professional lives for over 10 years to developing Fusion and growing its brand.

16. FMR is a limited liability company, not registered in Illinois, with its principal place of business in Florida.

17. FMR launched its own online and subscription-based entertainment brand under the name Fusion on October 28, 2013, nearly ten years after Fusion began operating under the Fusion brand.

18. FMR is a news and pop culture TV and digital network that provides programming on both linear and interactive platforms, and considers content providers in the digital world, not TV, to be its primary competition.

19. FMR is co-owned by Disney-ABC Group and Univision Communications.

20. Disney and Univision are multi-billion-dollar media companies.

21. Disney affiliate ABC Entertainment changed the way the world watches television forever when it became the first network to put its must-have content online in 2006. In doing so, ABC Entertainment led the industry forward in making broadcast content available online.

22. ABC.com provides access to full-length episodes of ABC shows online.

23. The entire Disney-ABC company has intentionally become platform agnostic.

24. Disney-ABC believes that great content thrives on any high-quality viewing device and can grow the audience and drive consumers to embrace new platforms and business models.

25. Disney-ABC's success is dependent, in part, on consumer preferences with respect to home entertainment formats, which includes web-based delivery of content.

26. Disney-ABC's broadcast and cable networks, stations, and online offerings compete for viewers and advertising sales with other broadcast, cable, and satellite services, as well as with home video products and internet usage.

27. Univision attracts audiences who are younger than those of its competitors and who frequently engage with Univision across linear, digital, and social platforms.

28. Univision is focused on digital because it believes Hispanics are digital consumers who are poised to be even more influential in the years ahead.

29. Univision delivers content from across all of its networks through its UVideos bilingual digital network.

30. Univision and just about every other media company that owns content are looking at non-traditional distribution platforms like "over-the-top" broadcasting over the internet.

31. Univision is moving more and more into digital video that is being produced by Univision in short form over a digital platform.

32. Univision believes that online content delivery is now going to become part of the entertainment ecosystem.

33. One factor that could cause Univision's actual results to differ materially from those it has expressed in forward-looking statements is Univision's failure to monetize its content on its digital platform.

34. Upon information and belief, Disney and Univision employ multiple inside and outside attorneys with trademark expertise.

35. Upon information and belief, Disney and Univision understand trademarks, and frequently apply for and enforce trademarks.

36. Upon information and belief, before launching their infringing Fusion brand, FMR, Disney, and/or Univision became aware of Fusion and its prior use of the Fusion trademarks. Upon information and belief, FMR either directly copied the Fusion name from

4

Fusion or became aware of Fusion and the Fusion trademarks and launched FMR's own Fusion brand anyway.

37. Upon information and belief, FMR selected the name Fusion after a marketing analysis of that name and consideration of other potential names. Upon information and belief, FMR selected the name Fusion because it anticipated that the name would be the most successful and most profitable.

38. At no time prior to FMR's launch did FMR contact Fusion regarding the Fusion trademarks.

## JURISDICTION AND VENUE

39. This Court has subject matter jurisdiction over Fusion's federal claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331 and 1338(a) and (b). This Court has supplemental jurisdiction over Fusion's state law claims pursuant to 28 U.S.C. §§ 1338 and 1367 because they are substantially related to the federal claims and form part of the same case or controversy and derive from a common nucleus of operative facts.

40. Fusion is a citizen of Illinois and FMR is not, and the amount in controversy exceeds $75,000. Therefore, diversity jurisdiction exists independently under 28 U.S.C. § 1332.

41. This Court has personal jurisdiction over FMR because it systematically and continuously does business in Illinois by at least broadcasting in Illinois, has committed acts of infringement in this district, and, upon information and belief, is seeking further agreements to broadcast in Illinois.

42. Venue is proper pursuant to 28 U.S.C. § 1391 because FMR is subject to personal jurisdiction in this district.

**TRADEMARKS AND CONFUSION**

43. Fusion enjoys trademark rights in "Fusion," "Fusion TV," "Fusion Radio," and "Fusion Pop," as well as its "F" logo in various iterations, which Fusion uses to promote its end-consumer-facing entertainment brand:



44. Fusion's "Fusion Radio" trademark is federally registered.

45. FMR also uses the name "Fusion" to promote its end-consumer-facing entertainment brand, as well as a nearly identical "F" logo:



46. Fusion's and FMR's services both include providing branded content to end consumers about lifestyle, pop culture, dance music, and entertainment aimed at English-speaking millennials and those of Hispanic descent.

47. Fusion and FMR have both marketed and operated through subscription cable/satellite providers, live events, and internet/digital channels.

48. According to Google Webmaster Tools, there are 40 links on Univision websites to Fusion's website.

49. According to Google advertised search results, FMR has purchased Google search engine advertisements that cause ads for FMR to appear when someone searches on Google for "Fusion internet radio."

50. Fusion and FMR both produce and publish content about the entertainment industry generally and dance music specifically.

51. Both Fusion and FMR have published interviews of the same artists, including Armin van Buuren, Gareth Emery, Afrojack, ATB, and Morgan Page.

52. Both Fusion and FMR have published news stories about the same artists, including Taylor Swift, Beyonce, Britney Spears, Miley Cyrus, Lady Gaga, Katy Perry, DJ Mag Top 100, Pete Tong, Coachella, Kaskade, Ultra Music Festival, Winter Music Conference, ATB, Diplo, Life In Color, EDC, and Deadmau5.

53. Consumers of entertainment services pay close attention to trade symbols and brand names.

54. There have been instances of actual confusion between Fusion's and FMR's services.

## COUNT I – FEDERAL TRADEMARK INFRINGEMENT

55. The above paragraphs are incorporated herein.

56. FMR's unauthorized use of the Fusion trademarks in connection with FMR's services is likely to cause confusion, mistake, or deception as to the source, sponsorship, or approval of Fusion's and FMR's services.

57. FMR's infringement has occurred in interstate commerce.

58. FMR's infringement has caused and unless restrained will continue to cause serious and irreparable injury to Fusion.

## COUNT II – ILLINOIS DECEPTIVE TRADE PRACATICES

59. The above paragraphs are incorporated herein.

7

60. FMR's unauthorized use of the Fusion trademarks has caused, and is likely to cause in the future, a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation, or connection of Fusion's and FMR's services.

61. FMR's actions have caused and unless restrained will continue to cause serious and irreparable injury to Fusion.

## REQUEST FOR RELIEF

**WHEREFORE,** Fusion asks the Court to:

i. Declare that FMR has willfully violated the Lanham Act;

ii. Declare that FMR has willfully violated the Illinois Deceptive Trade Practices Act;

iii. Permanently enjoin FMR from using the Fusion trademarks or otherwise creating confusion with Fusion's services;

iv. Order the Director of the USPTO and/or FMR to abandon all FMR trademark applications for "Fusion" or that are otherwise likely to cause confusion with Fusion's services;

v. Order an accounting of FMR's profits and order FMR to disgorge to FMR all profits by which FMR was unjustly enriched through its unauthorized use of the Fusion trademarks;

vi. Order FMR to pay compensatory damages caused by FMR's infringement;

vii. Order FMR to pay punitive damages;

viii. Order FMR to pay Fusion's attorney fees and costs;

ix. Order FMR to conduct, at its expense, corrective advertising;

x. Order FMR to pay for corrective advertising by Fusion; and

xi. Award all other available relief the Court deems appropriate.

RESPECTFULLY SUBMITTED,

*/s/ Matthew V. Topic*

Attorneys for Plaintiff
FUSION COMMUNICATIONS CORP.

Matthew V. Topic
Jonathan I. Loevy
LOEVY & LOEVY
312 North May St., Suite 100
Chicago, IL 60607
(312) 243-5900
matt@loevy.com
jon@loevy.com